JOHNSON *vs.* JOHNSON.

*It seems;* that where a divorce bill, taken *pro confesso,* shows apparent condonation, but states circumstances which go to negative a forgiveness, the master has a right to take proof upon the question of condonation.

Condonation is not, in all cases, a bar to the remedy. It amounts only to a forgiveness, accompanied with an implied condition of not repeating the injury; and when the forgiveness proceeds from the wife, it is upon the idea of her being treated with conjugal kindness. On a breach of the condition, in either case, the right to prosecute for the former injury revives.

Nor need the subsequent injury be of the same sort or be proved in the same manner, or be sufficient of itself, when proved, to warrant a divorce.

Condonation is less binding on the wife than the husband.

IN this suit the bill was filed by a wife against her husband for a divorce *a vinculo matrimonii,* on the ground of adultery.

The defendant suffered the bill to be taken as confessed; and upon the usual reference to a master, the husband's counsel went into an enquiry, on the cross-examination of the complainant's witness, to show a condonation of the offence.

The master reported, that the fact of adultery was clearly established by the testimony : but that, in his opinion, there had been a continued matrimonial cohabitation of the parties after the fact of such adultery was known to the complainant, and which, on her part, amounted to a condonation of the offence; and, consequently, she was not entitled to the prayer of her bill.

The cause was now heard upon the report and the testimony returned by the master.

Mr. *W. Mulock,* appeared for the complainant.

Mr. *John A. Lott,* for the defendant :

The adultery charged in the bill is not established. There

*October* 24, 1832.

*Divorce.*
*Condonation.*

has been a condonation of the offence, if committed. The master had not only the right, but it was his duty to take proof touching the question of condonation. The complainant is not entitled to a divorce.

*October* 29,
1832.

THE VICE-CHANCELLOR. It is objected, in the first place, on the part of the complainant, that no inquiry, as to a condonation, was admissible, the same being a matter of defence which ought to have been set up by plea or answer, and not available after the bill has been taken *pro confesso.*

The master permitted the inquiry, as being a part of the subject matter of the bill, in which it is alledged, that after a discovery of the husband's misconduct, the wife continued to reside with him, and accompanied him to England in the month of August, one thousand eight hundred and thirty-one, and from thence back to New York in March, one thousand eight hundred and thirty-two but, adding circumstances to show how all this ought not to be taken as a forgiveness on her part. It was upon this ground the master deemed the inquiry a proper one, as being a part of the case made by the bill itself. I am inclined to think it was so ; but I forbear to express a decisive opinion upon the point, since, even by giving to the defendant the benefit of the facts elicited by the inquiry, I am still of opinion the complainant is entitled to a decree.

The testimony discloses enough to make out a case of condonation, at the time the parties embarked at Liverpool on their return to New York. But the effect of a condonation is not, in all cases, to bar the party of her remedy : since, it is only a forgiveness of the offence, accompanied with an implied condition that the injury shall not be repeated—and, when the forgiveness proceeds from the wife, that she shall be treated with conjugal kindness. On a breach of the condition, the right to prosecute for the former injury revives. This is a well settled rule, and it is founded in the wisest policy. Nor does it appear to be necessary that the subsequent injury should be of the same sort, and proved in the same clear man-

her, or be sufficient of itself, when proved, to warrant a separation. In *Durant* v. *Durant*, 1 *Hagg. Eccles. R.* 733, it is shown, both by reason and authority, that cruelty will revive adultery, and that less is necessary to revive than to found an original sentence. Sir *John Nicholl* there remarks, that the good sense of the implied condition, when a condonation of adultery takes place, is, that the husband shall not only abstain from adultery, but, in future, treat his wife in all respects (to use the words of the law) " with conjugal kindness." On these terms, it may be supposed, she agrees to overlook past injuries.

Another principle appears to be equally well established, namely, that the effect of cohabitation as a condonation is less binding on a wife that it is on the husband : because, in the language of Lord *Stowell* (*Beeby* v. *Beeby*, 1 *Hagg. Eccles. R.* 793,) she is more *sub potestate*, more *inops concilii*, she may entertain better hopes of the recovery and reform of her husband, her honor is less injured and is more easily healed ; and so far from its being improper that she should for a time show a patient forbearance, it is commendable in her to exercise it, with a view to reclaim him ; which would not be tolerated in the husband where the wife should happen to be the delinquent party. Besides, she may find a difficulty either in quitting his house or withdrawing from his bed. It would, therefore, be hard if implied forgiveness, arising from a continued apparent cohabitation, was held to be a strict bar when she is finally compelled to resort to her legal remedy.

These principles apply with peculiar force to the facts and circumstances of the present case, as disclosed in the testimony before the master ; and I am entirely satisfied, although there had been condonation on the part of the complainant previous to and down to the time of their departure from Liverpool on their return to New York, that the subsequent misconduct of the defendant towards his wife was such a violation of the implied condition of the forgiveness as restores to the wife her original right and remedy. The misconduct imputed to him commenced the second night they were on board the ship ; and it continued, according to the evidence, in a greater or less degree, during the whole passage. There was

1832.          little or no personal violence used, but it consisted of oppro-

STURTEVANT    brious epithets and insulting language, a total neglect of all

*v.*           attention to her comforts, and a course of conduct calculated

WATERBURY     to wound the feelings and alienate the affections; in fact, the very reverse of what was suited to the married state and becoming a husband. It was any thing but conjugal kindness. On their arrival in New York, she appears to have separated herself entirely fromhi m; and, shortly afterwards sought redress by filing this bill, on account of the adultery previously committed.

Under the circumstances of the case, I am of opinion she is entitled to a decree dissolving the marriage; and, with costs.